UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TIMOTHY COMMAND and
MARCY COMMAND,

                  Plaintiffs,

v.

BANK OF AMERICA,

                  Defendant.

_____/

Case No. 1:10-cv-1117

Hon. Robert J. Jonker

**REPORT AND RECOMMENDATION**

This matter is now before the court on "Defendant Bank of America, N.A.'s Motion to Dismiss the Eighth and Tenth Claims for Relief in the First Amended Complaint and to Remand the Remainder of the Action to the State Court" (docket no. 36) and plaintiffs' motion to file a second amended complaint (docket no. 40).[1]

    **I.**      **Background**

    **A.**      **The original complaint filed in the Grand Traverse County Circuit Court**

Plaintiffs Timothy Command and Marci Command filed this *pro se* action against defendant Bank of America (BANA) on October 7, 2012 in the Grand Traverse County Circuit Court. *See* Compl. (docket no. 1-2). Their complaint alleged that BANA became the successor to their bank (Michigan National Bank) on or about April 23, 2007. *Id.* at ¶¶ 8-11. At some point in time, BANA illegally charged them overdraft fees by manipulating overdraft procedures, "allowing

---

[1] Plaintiffs styled their motion as "Plaintiffs Motion to Amended [sic] Complaint to: Join Parties State Events Which Have Happened Since the Date of Pleading." *See* docket no. 40.

[BANA] to create fictitious charges and then take money directly out of their customer bank accounts for said fictitious charges." *Id.* at ¶ 13.  BANA also "took over" plaintiffs' mortgage for property located at 626 E. State Street, Fife Lake, Michigan (the "Fife Lake property"), on or about July 1, 2008. *Id.* at ¶ 12.  Plaintiffs alleged that they fell behind in their mortgage payments because BANA "intentionally confiscated thousands of dollars out of Plantiffs [sic] bank account, in fictitious overdraft fees," and that BANA foreclosed on the property on or about April 2, 2010. *Id.* at ¶¶ 28-29.  Plaintiffs did not allege the number of times they were charged overdraft fees, the dates such fees were charged, or the amount of fees. The complaint included seven counts against BANA related to the alleged "fictitious overdraft fees." *Id.* at ¶¶ 36-58.[2]

### B.      BANA's removal of the complaint to this Court

BANA removed the complaint to this Court on November 12, 2010 pursuant to 28 U.S.C. § 1331, 1441 and 1446, based upon this Court's original jurisdiction under 28 U.S.C. § 1331 as an action "arising under the Constitution, laws, or treaties of the United States," because plaintiffs claimed that defendant violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. *See* Notice (docket no. 1).  BANA summarized plaintiffs' allegations as follows:

> Plaintiffs are allegedly husband and wife who have had a deposit account with Bank of America, N.A. and been charged overdraft fees.  Plaintiffs aver, among other things, that Bank of America, N.A. has manipulated its overdraft procedures when processing customer transactions; specifically, that Bank of America, N.A. posts and reorders debit transactions in such a manner as to maximize the assessment of overdraft fees to the customer's account.  Plaintiffs further aver that Bank of America, N.A. deducted thousands of dollars in overdraft fees from their account, allegedly causing them to fall behind in their mortgage payments and allegedly leading to the foreclosure on certain real property they owned.  Plaintiffs assert that such alleged conduct violates the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1962), and constitutes breach of a contract, fraud and

---

[2] The Court notes that the counts in plaintiffs' complaint are numbered I, IV, V, VI, VII, VIII and IX. *See* Compl.

2

misrepresentation, breach of an express warranty, conversion, and mail fraud.

*Id.*

### C. Plaintiffs' amended complaint

After plaintiffs' complaint was removed to this Court, the Grand Traverse County Circuit Court forwarded a copy of "Plaintiffs' 1st Amended Complaint" (the "amended complaint") which had been filed in the state court on October 20, 2010 (prior to removal). *See* Amended Compl. (docket no. 7-5). In their amended complaint, plaintiffs' re-alleged their claims that BANA "intentionally confiscated thousands of dollars out of Plaintiffs [sic] bank account, in fictitious overdraft fees causing Plaintiffs to fall behind on their mortgage payment." Amend. Compl. at ¶ 28. As with their original complaint, plaintiffs' amended complaint did not allege the number of times they were charged overdraft fees, the dates such fees were charged, or the amount of fees. Rather, they only alleged that this activity occurred sometime after BANA became the successor to Michigan National Bank on April 23, 2007. *Id.* at ¶¶ 10, 13-27.

Plaintiffs' amended complaint expanded their claim to include ten counts: Count I (Breach of contract); Count II (Actual fraud/Intentional misrepresentation); Count III (Breach of express warranties); Count IV (Honest services fraud); Count V (Tortious interference with contract, advantageous business relationship or expectancy); Count VI (Conversion); Count VII (Extortion); Count VIII (Violation of Hobbs Act under color of law); Count IX (Mail fraud); and Count X (Racketeer Influenced and Corrupt Organizations Act (RICO)). *Id.* at ¶¶ 36-109. The amended complaint did not include statutory citations to support plaintiffs' claims brought for mail fraud or for violations of the Hobbs Act and RICO. Plaintiffs sought judgment against BANA for damages "in an amount in excess of $25,000.00, together with all allowable interest, costs, and fees; including

actual attorney fees" *Id.* at § IV.  BANA considered the amended complaint to be the operative

pleading in this matter and filed an answer.  *See* BANA's Answer and Affirmative Defenses (docket

no. 11).[3]

> **D.     This Court's denial of plaintiffs' motion for**
> **injunctive relief related to the foreclosure of the**
> **Fife Lake property**

On February 10, 2011, this Court denied plaintiffs' motion (originally filed in the

state court) to stay the expiration of the redemption period on the mortgaged property, stay eviction,

and to bar the state court from enforcing a writ of restitution.  *See* Order (docket no. 20).  During

the course of oral argument on the motion, the Court observed that in asking for a preliminary

injunction, plaintiffs could not link their allegations that BANA collected "fictitious overdraft fees"

at some point after April 23, 2007, with their failure to avoid a mortgage foreclosure which began

a few years before that date when plaintiffs failed to pay property taxes:

> The issue in front of the Court is on the plaintiffs' motion originally filed in
> the circuit court, I think for Grand Traverse County, but in any event the Michigan
> circuit court to stay or extend the redemption period and to stay eviction from the
> property.
>
> *     *     *
>
> The Court is not satisfied, though, that what's presented here satisfies the
> fraud or tantamount to fraud exception that would be necessary to extend a
> redemption period either on a preliminary or a permanent basis.  Before the issue was
> raised today regarding the notice of the adjournments, the main thrust of the papers
> from the plaintiffs was that the way the bank charged for late fees and the way it
> ordered those charges had the effect of draining the plaintiffs' bank account faster
> than it would otherwise be drained if these were posted in a strictly chronological
> fashion and that that ought to be enough to appeal to the conscience of the court and
> to extend the position here of the plaintiffs on the time to redeem.

---

[3] The Court notes that the Sixth Circuit construed plaintiffs' amended complaint as including only one federal claim, i.e., the RICO claim.  *See* discussion, *infra*.

4

A couple of problems that I think are inherent in that argument: Number 1, the contract of a bank account and the contract of the mortgage are really separate contracts. They happen to be related here because the bank account wound up with Bank of America, and the servicing arm for the bank ultimately wound up servicing this mortgage, but they are still separate contracts.

The fact that a related party or even the same party is allegedly in breach or even unconscionable breach of some other contract isn't enough to make that factual link. And I think that's especially true on this record where according to the unrebutted documents and submissions at this point, it appears that the initial problems on the defaults in the mortgage date back into 2004, '5, and '6 related to property taxes that were unpaid, up to maybe as much as 35,000, which are years before the plaintiffs even had a bank account with the defendant here.

So even if you could otherwise make that link, you can't really do it here on this factual record. And I have questions even if the times had completely overlapped whether you would be able to do it in a way that fits within these narrow and exceptional circumstances. So that's, I think, a fundamental and insurmountable problem for the plaintiffs on their probability of success.

Trans. at pp. 18 and 22, 23-24 (docket no. 28).

### E.    The Sixth Circuit affirms this Court's denial of injunctive relief

Plaintiffs filed an interlocutory appeal. *See* Notice of Interlocutory Appeal (docket

no. 22). In affirming this Court's denial of the motion for preliminary injunction, the Sixth Circuit

summarized the underlying facts of this case, noting that plaintiffs' action included only one federal

claim:

Marci and Timothy Command, proceeding pro se, appeal the denial of their motion for a preliminary injunction in this action alleging claims under the Racketeer Influenced and Corrupt Organization Act (RICO), 18 U.S.C. § 1961 et seq., and state law arising out of the foreclosure of the Commands' rental property. . .

In January 2010, BAC Home Loans Servicing, LP, foreclosed on the mortgage of the Commands' rental property located at 626 East State Street in Fife Lake, Michigan. The foreclosure sale occurred on April 7, 2010, and the redemption period after sale extended until October 7, 2010.

5

On the final day of the redemption period, the Commands filed suit in state court against Bank of America, N.A., alleging that the bank improperly charged overdraft fees on their deposit accounts. The Commands claimed that the improper fees caused them to default on their mortgage. They sought an extension of the redemption period and delay of the foreclosure. Bank of America removed the case to federal district court.

On February 9, 2011, the district court held a hearing on the Commands' motion to stay expiration of the redemption period, which it treated as a motion for a preliminary injunction. The district court denied the motion, relying primarily on the Commands' failure to demonstrate a likelihood of success on the merits. . .

*          *          *

Here, the district court determined that the Commands did not demonstrate a likelihood for success on the merits. Under Michigan law, a court may extend the redemption period only in "unusual circumstances such as fraud." *Flynn v. Korneffel*, 547 N.W.2d 249, 257 (Mich. 1996). The Commands' suit against Bank of America for excessive checking overdraft fees is not sufficiently related to the foreclosure to constitute the requisite fraud or tantamount to fraud needed to justify a court's intervention. The Commands also argued that the adjournment of the foreclosure sale from February 17, 2010 to April 7, 2010 violated state law, but the statute allowed the bank to do this. *See* Mich. Comp. Laws § 600.3220 (providing that a foreclosure sale may be adjourned by the officer conducting the sale "at the request of the party in whose name the sale is published"). Moreover, the Commands never demonstrated prejudice in the sale's delay, and they never raised the capital needed to halt the sale. Because we determine that the district court did not abuse its discretion in finding the Commands could not demonstrate any likelihood of success on the merits, we need not proceed further. *See Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). ("Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal.")

*Marci Command; Timothy Command v. Bank of America*, No. 11-1310 (6th Cir. March 5, 2012)

(docket no. 30).

## F.      Proceedings in the Multidistrict Litigation Panel

While the Sixth Circuit was addressing the interlocutory appeal, plaintiffs' action was closed on April 11, 2011, and transferred to a United States Judicial Panel on Multidistrict Litigation, *In re: Checking Account Overdraft Litigation*, MDL No. 2036. *See* Transfer Order

(docket no. 26).  About 14 months later, plaintiffs' action was remanded back to this Court, where it was re-opened on June 28, 2012.  *See* Conditional Remand Order (docket nos. 32 and 34).

### G.   BANA's motions to dismiss Counts VIII and X of the amended complaint and to remand

Approximately one month later, BANA moved to dismiss Counts VIII (Hobbs Act violation) and X (RICO violation) of the amended complaint and to remand the remainder of the action back to the Grand Traverse County Circuit Court.  *See* BANA's Motion to dismiss and remand (docket no. 36).  Plaintiffs' response did not address the legal issues raised in BANA's motion to dismiss.  With respect to their Hobbs Act claim, plaintiffs stated that BANA's argument opposing that claim was moot because they intended to remove it in their proposed second amended complaint.  *See* Plaintiff's Response (docket no. 43 at pp. 3-4).  With respect to the RICO claim, plaintiffs' response provided a few sentences of argument and legal citations which did not address the grounds raised in BANA's motion to dismiss.  *Id.*

### H.   Plaintiffs' proposed second amended complaint

Plaintiffs also filed a motion to file a second amended complaint (docket no. 40). Unlike the original complaint or the amended complaint, plaintiffs' proposed second amended complaint seeks to commence an entirely different lawsuit which collaterally attacks the mortgage foreclosure of the Fife Lake property and seeks damages from eight new defendants who were allegedly "cartel partners" who conspired to illegally seize the property. In their motion, plaintiffs seek to add nine new defendants: The Federal National Mortgage Association (Fannie Mae); Bank of America, Corporation (BOA); BAC Home Loans Servicing, LP (BAC); Mortgage Electronic Registration Systems, Inc. (MERS); Merscorp, Inc. (MERSCORP); Orlans Associates, PC (Orlans); Marshall R. Isaacs (Isaacs); Jason D. Knight (Knight); and Susan E. Solwold (Solwold). *See* Motion

to amend at ¶ I; Second Amend. Compl. (docket no. 41 at p. 3).  Plaintiffs separate all of the defendants into two groups, "The Banks" ( Fannie Mae, BOA, BANA, BAC, MERS and MERSINC)[4], and "The Affiliates" (Orlans, Isaacs, Knight and Solwold).  *Id.*  Plaintiffs' proposed second amended complaint also includes four additional individuals and entities in the caption: Brian Summerfield (Attorney for BANA); The Corporation Company (Registered Agent for BAC); Carrie Seib of Orlans Associates, PC (Attorneys for Fannie Mae);  and Metro Detective Agency (process server for MERS and ).  *Id.* at pp. 1-2.  While plaintiffs have identified Brian Summerfield, The Corporation Company, Carrie Seib, and Metro Detective Agency as representatives of various defendants, it does not appear that plaintiffs' seek to include them as defendants.

The proposed second amended complaint consists of 505 paragraphs.  Only three paragraphs are directly related to the substance of the complaint which was removed to this Court, i.e., BANA's alleged collection of "fictitious overdraft fees."  *Id.* at ¶¶ 60-62 ("4. Predatory Banking").  These paragraphs appear in § II of the proposed second amended complaint, as part of a collection of allegations entitled "Affidavit of Facts."  *Id.* at ¶¶ 42-133.  This section of the second amended complaint (which despite its name is not in the form of an affidavit), includes 22 claims which plaintiffs use to collaterally attack the mortgage foreclosure.  Plaintiffs do not include these 22 claims as separate counts, but they seek in excess of $75,000 in damages for the alleged conduct. These claims, which according to plaintiffs comprise a "Single Transaction Scheme" are as follows: 1. Cartel formation, collusion, conspiracy initiated to  circumvent recording/transfers and related fees; 2. Predatory lending-bungled [sic] mortgage with break in the chain of title; 3. Zero liability acquisition; *4. Predatory banking*; 5. Predatory foreclosure - Establishment of straw man front; 6.

---

[4] Plaintiffs sometimes refer to MERS and MERSCORP collectively as "MERSINC."  Second Amend. Compl. (docket no. 41 at p. 3).

Predatory Foreclosure - Lead homeowner to believe loan is being modified; 7. Predatory foreclosure - Retain foreclosure mill to handle any obstacles; 8. Predatory foreclosure - Fabricate impressive title-assuming authority- with no authorization; 9. Predatory foreclosure - Forgery and perjury of assignment of mortgage (AOM); 10. Predatory foreclosure - Forgery and perjury of additional documents; 11. Predatory foreclosure - Additional document fraud affidavit of compliance fraud; 12. Predatory Foreclosure - Additional document fraud Sheriff's Deed on mortgage foreclosure; 13. Predatory foreclosure - Additional document fraud affidavit of auctioneer and certificate of redemption period; 14. Predatory foreclosure - Additional document fraud declaration regarding rights of party with an interest in the Indebtedness to bid at Sheriff's Sale pursuant to MCLA 600.3204 and 600.3228; 15. Predatory foreclosure - additional document fraud affidavit of purchaser; 16. Predatory foreclosure - Recording false document AOM as if it is true; 17. Predatory foreclosure - Sheriff sale commenced under color of official right; 18. Predatory foreclosure - Additional statutory fraud - adjournment; 19. Predatory foreclosure - Recording the Dirty Deed; 20. Predatory foreclosure - Government agency seizure of property without standing; 21. Shuffling property among cartel to escape restitution; and 22. Fraud on the court - Submitting of false documents as if they were true. *Id.* at ¶¶ 42-133 (emphasis added).

 In addition to these 22 claims, the proposed second amended complaint includes 21 counts which collaterally attack the mortgage foreclosure based upon actions performed by "The Banks" and the "Affiliates": Count I (Conspiracy ¶¶ 134-42); Count II (Collusion ¶¶ 143-51); Count III ("Legal Argument: Lack of required documentation and fraud on the court" ¶¶ 152-88); Count IV ("Legal argument: The assignment of mortgage, if authentic, gives rise to violation of 15 U.S.C. § 1641(F) and statutory damages pursuant to 15 U.S.C. § 1640(A)" ¶¶ 189-94); Count V

(Negligence ¶¶ 195-97); Count VI (Wrongful foreclosure by advertisement ¶¶198-203); Count VII (Intentional infliction of emotional distress ¶¶ 204-08); Count VIII (Illegal violation of Fair Debt Collection Practices Act ¶¶ 209-10); Count IX (Tortious interference with contract, advantageous business relationship, or expectancy ¶¶ 211-17); Count X (Actual Fraud/Intentional misrepresentation ¶¶ 218-83); Count XI (Illegal statutory procedure, fraud and violations ¶¶ 284-336); Count XII (Michigan court rule violations and illegal eviction 337-78); Count XIII (Conversion ¶¶ 379-89); Count XIV (Extortion ¶¶ 390-92); Count XV (Honest Service Fraud -18 U.S.C. § 1346  ¶¶ 393-424); Count XVI (Mail fraud (18 U.S.C. § 1346) ¶¶ 425-50); Count XVII (RICO ¶¶ 451-60); Count XVIII (Violations of the Sherman Anti-Trust Act (15 U.S.C. §§ 1-7) ¶¶ 461-77); Count XIX (Abuse of process ¶¶ 478-85); Count XX (Violations of United States Constitution ¶¶ 486-92); and, Count XXI (Quiet title ¶¶ 493-501).  *Id.* (docket nos. 41 and 41-1).

Plaintiffs seek the following relief in the second amended complaint:

A.      That sheriff deed and foreclosure are voided;

B.      That the COMMANDS have and recover against THE BANKS and AFFILIATES Quiet Title to the property;

C.      That THE BANKS and AFFILIATES be precluded from filing any amended, modified or substitute claim or seeking further;

D.      That the COMMANDS have and recover against THE BANKS and AFFILIATES a sum to be determined by the Court in the form of actual damages;

E.      That the COMMANDS have and recover against THE BANKS and AFFILIATES a sum to be determined by the Court in the form of statutory damages;

F.      That the COMMANDS have and recover against THE BANKS and AFFILIATES a sum to be determined by the Court for punitive damages;

G.   That the COMMANDS have and recover against THE BANKS and AFFILIATES a sum to be determined by the Court together with interest and costs on each applicable count of the complaint;

H.   That the COMMANDS have and recover against THE BANKS and AFFILIATES a sum to be determined by the Court for all costs and expenses, including reasonable attorney's fees, expert fees, and other costs and disbursements;

I.   That the COMMANDS have such other and further relief as the Court may deem just and proper.

J.   Preliminary and permanent injunctive relief enjoining the Defendants from proceedings with eviction procedures, selling, transferring or otherwise taking any action against COMMANDS or COMMANDS property based upon the Sheriffs Deed on Mortgage obtained under the actions and improprieties of THE BANKS and AFFILIATES failure to comply with the letter and intent of the statutory requirements of a Foreclosure by Advertisement under Chapter 32 of the Revised Judicature Act of 1961.

*Id.* (docket no. 41-1 at pp. 44-45).

## I.   Plaintiffs' other litigation raising a similar collateral attack on the mortgage foreclosure on the Fife Lake property and seeking damages from individuals and entities which played a role in that foreclosure

The claims raised in plaintiffs' proposed second amended complaint are not new. Plaintiffs raised similar collateral attacks as counterclaims in a separate lawsuit, *Federal National Mortgage Association v. Tim Command et al.* ("*Fannie Mae v. Command*"), No. 1:11-cv-703 (W.D. Mich.), which was filed in the Grand Traverse County Circuit Court shortly before the present action was transferred to the Multi District Litigation panel. Fannie Mae filed its action in Michigan's 86th Judicial District Court (Traverse City, Michigan) on or about March 30, 2011, for the purpose of evicting plaintiffs from the Fife Lake property, which Fannie Mae had purchased at a sheriff's sale after plaintiffs' mortgage was foreclosed by advertisement. *See Fannie Mae v. Command* (summons

and complaint) (docket no. 1-5).   Fannie Mae obtained a judgment against the Commands on June 13, 2011.  *Id.* (Judgment) (docket no. 1-1).  The Commands appealed to the Grand Traverse County Circuit Court on  or about June 23, 2011.  *Id.* (Claim of appeal) (docket no. 1-2 at p. 10). On or about June 25, 2011, plaintiffs filed a 379-paragraph counterclaim in the state court action, which included collateral attacks on the mortgage similar to those alleged in their proposed second amended complaint.  *Id.*  ("Defendants 1st Amended Counter Claim") (docket nos. 1-3 and 1-4).  Then, plaintiffs removed the state court eviction action to this Court on July 8, 2011.  *Id.* (Notice of Removal) (docket no. 1).

Plaintiffs' counterclaim in *Fannie Mae v. Command* appears to have been used as a template of sorts for the proposed second amended complaint offered here.   Eight of the ten defendants named in the second amended complaint were third-party defendants in *Fannie Mae v. Command*: Fannie Mae; BOA; BANA; BAC; Orlans; MERS; MERSCORP; and Isaacs.[5]   *Id.* ("Defendants 1st Amended Counter Claim").   As in the second amended complaint, the Commands' counterclaim separated the third-party defendants into "The Banks" and the "Affiliates."  *Id.* at p. 3. The Commands' counterclaim included 13 counts: Count I (Illegal statutory procedure, fraud and violations); Count II (Michigan Court Rule violations); Count III (Actual fraudulent misrepresentation); Count IV (Conversion); Count V (Extortion); Count VI (Violation of Hobbs Act under color of law); Count VII (Honest services fraud); Count VIII (Mail  fraud); Count IX (RICO); Count X (Violations of Sherman Antitrust Act); Count XI (Abuse of process); Count XII (Quiet title); and, Count XIII (Violations of the United States Constitution).  *Id.* at ¶¶ 58-349.  For their

---

[5] Plaintiffs also named The Corporation Company and Metro Detective Agency as third-party defendants.  As discussed, it does not appear that these two entities are named as defendants in the proposed second amended complaint.

relief, the Commands sought: monetary damages in excess of $25,000.00; that the foreclosure process, the sheriff sale and the transference of the property deed "be stayed and/or voided"; "[a]n Injunctive Order dismissing all foreclosure and eviction proceedings with prejudice"; quiet title; "[t]wo years loss of income at $30,000 each, plus treble damages"; "[v]alue of stolen property $624,100, plus treble damages"; and, costs, fees and interests.  *Id.* (docket no. 1-4 at p. 28).

This Court remanded *Fannie Mae v. Command* to state court on January 30, 2012. *Id.* (Order Approving Report and Recommendation) (Jan. 30, 2012) (docket no. 31).  In reaching this determination, the Court determined that the Commands could not remove this state action to federal court based upon their federal counterclaims:

> Section 1331 "vests in federal district courts jurisdiction over 'all civil actions arising under the Constitution, laws or treaties of the United States.'" *Vaden v. Discover Bank*, 129 S.Ct. 1262, 1272 (2009) (quoting 28 U.S.C. 1331).  A suit "arises under" federal law, however, "only when the plaintiff's statement of his own cause of action shows that it is based upon federal law."  *Id.* (quoting *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152 (1908)).  Federal jurisdiction "cannot be predicated on an actual or anticipated defense. . . [n]or can federal jurisdiction rest upon an actual or anticipated counterclaim."  As the Court recognized, "a federal counterclaim, even when compulsory, does not establish 'arising under' jurisdiction."  *Id.* (citations omitted).

> As previously observed, Fannie Mae initiated this action in state court asserting an eviction action, a claim arising under state law.  The Commands subsequently removed the matter to this Court asserting that jurisdiction was proper in this Court because the claims asserted in their Counter Complaint arise under federal law.  As the aforementioned authority makes clear, however, such is an insufficient basis to confer subject matter jurisdiction on this Court. *See, e.g.*, *Vaden*, 129 S.Ct. at 1272; *Chase Manhattan Mortgage Corp. v. Smith*, 507 F.3d 910, 914-15 (6th Cir. 2007) ("[b]ecause it is well settled that federal counterclaims and defenses are 'inadequate to confer federal jurisdiction,' [such] fails to establish an objectively reasonable basis for removal"); *Deutsche Bank National Trust Co. v. Taylor*, 2011 WL 1374988 at *2 (N.D. Ohio, Apr. 12, 2011) ("[u]nder the 'well pleaded complaint' rule, a case arises under federal law, only when a federal question appears on the face of the plaintiff's complaint" and "[a] counterclaim raising a federal question cannot confer federal jurisdiction").

*Id.* (Report and Recommendation at pp. 2-3) (docket no. 30).

After filing its motion to dismiss the present action, BANA advised the Court that on October 16, 2012, the Michigan Court of Appeals had vacated the judgment of possession at issue in *Fannie Mae v. Command*. *See* Notice (docket no. 48). In its order, the Michigan Court of Appeals held that "in lieu of granting the application for leave to appeal, the Court orders that the June 13, 2011 judgment of possession is VACATED for lack of personal jurisdiction, and failure to afford basic due process to defendants." *Federal National Mortgage Association v. Tim Command*, No. 306582 (Mich. App. Oct. 16, 2012) (internal citations omitted) (docket no. 48-1).

## II. Discussion

### A. BANA's motion to dismiss (docket no. 36)

### 1. Legal standard

BANA seeks dismissal of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6). As discussed, plaintiffs filed only a brief response to this motion, in which they admitted that the Hobbs Act claim was moot. Rather than address BANA's arguments with respect to the RICO claim in any detail, plaintiffs moved to file a second amended complaint which seeks to entirely change this action from one alleging that BANA wrongfully collected overdraft fees into a an action collaterally attacking the mortgage foreclosure on the Fife Lake property and seeking damages from nine new defendants who allegedly participated in that foreclosure. For the reasons discussed below, the Court concludes that plaintiff's remaining federal claims should be dismissed and that their action should be remanded to the state court pursuant to 28 U.S.C. § 1447(c).

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) seeks to dismiss a complaint for "failure to state a claim upon which relief can be granted." A complaint may be dismissed for

failure to state a claim if it fails to give the defendants a fair notice of the claim and the grounds

upon which it rests.  *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 555 (2007).  *See* Fed. R.

Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement

of the claim showing that the pleader is entitled to relief").  A plaintiff's obligation to provide the

defendants with a statement of his claim is obligated to provide "more than labels and conclusions."

*Id.*  Rather,

> [A] complaint must contain sufficient factual matter, accepted as true, to "state a
> claim to relief that is plausible on its face."  A claim has facial plausibility when the
> plaintiff pleads factual content that allows the court to draw the reasonable inference
> that the defendant is liable for the misconduct alleged.  The plausibility standard is
> not akin to a "probability requirement," but it asks for more than a sheer possibility
> that a defendant has acted unlawfully.  Where a complaint pleads facts that are
> "merely consistent with" a defendant's liability, it "stops short of the line between
> possibility and plausibility of 'entitlement to relief.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

In making this determination, the complaint must be construed in the light most

favorable to the plaintiff, and its well-pleaded facts must be accepted as true.  *Morgan v. Churchs*

*Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).  In addition, "[w]hen a court is presented with a

Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public

records, items appearing in the record of the case and exhibits attached to defendant's motion to

dismiss so long as they are referred to in the Complaint and are central to the claims contained

therein."  *Bassett v. National Collegiate Athletic Association*, 528 F.3d 426, 430 (6th Cir. 2008).

Finally, it is well established that "*pro se* complaints are held to even 'less stringent

standards than formal pleadings drafted by lawyers.'"  *Kent v. Johnson*, 821 F.2d 1220, 1223 (6th

Cir. 1987), quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  However, the duty to be "less

stringent" with *pro se* complaints does not require this court to conjure up unpled allegations.

*McDonald v. Hall*, 610 F.2d 16, 19  (lst Cir. l979).

### 2.      Plaintiffs' federal claims

### a.      RICO

BANA removed plaintiffs' original complaint on the basis of the RICO claim.  *See*

Notice of Removal (docket no. 1).  Under RICO:

> It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c).

To state a civil claim under RICO,  a plaintiff must allege: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985);  *Heinrich v. Waiting Angels Adoption Services, Inc.*, 668 F.3d 393, 404 (6th Cir. 2012); 18 U.S.C. § 1962(c).  To satisfy the "pattern of racketeering" element, a plaintiff must plead (and ultimately prove) that "at least two acts of racketeering activity" occurred over a period of years.  18 U.S.C. § 1961(5).  "Racketeering activity," in turn, is defined as the violation of any of a number of statutes listed in § 1961(1).

To state a RICO claim, a plaintiff must allege facts to plead sufficiently and plausibly two predicate acts.  *See*, *e.g.*, *Advocacy Organization for Patients and Providers v. Auto Club Insurance Association*, 176 F.3d 315, 325-26 (6th Cir. 1999) (upholding dismissal of RICO claim because complaint did not sufficiently plead mail and/or wire fraud or extortion as predicate acts).  A plaintiff must show not only that the predicate act was a "but for" cause of the plaintiff's injuries, but also that it was a proximate cause.  *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992).  A plaintiff must show "some direct relation between the injury asserted and the

16

injurious conduct alleged." *Id.* Finally, under RICO, an "enterprise" is defined as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity," while a "person" is defined as "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3), (4).

Plaintiffs' amended complaint did not allege the existence of an "enterprise" under RICO. "[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King,* 533 U.S. 158, 161 (2001). Plaintiffs have alleged that BANA performed the predicate acts of the alleged RICO violation. However, they have not identified any "enterprise" other than BANA. Plaintiff cannot maintain an action against BANA as both the "enterprise" that engaged in alleged racketeering and the person or business entity subject to civil liability under the RICO statute. "Under RICO, a corporation cannot be both the 'enterprise' and the 'person' conducting or participating in the affairs of that enterprise." *Begala v. PNC Bank, Ohio, National Association*, 214 F.3d 776, 781 (6th Cir. 2000). *See Miranda v. Ponce Federal Bank*, 948 F.2d 41, 44-45 (1st Cir. 1991) ("[w]e have consistently interpreted the statutory requirement that a culpable person be 'employed by or associated with' the RICO enterprise as meaning that the same entity cannot do double duty as both the RICO defendant and the RICO enterprise"); *Wiley v. Hughes Capital Corp.*, 746 F.Supp. 1264, 1297 (D.N.J. 1990) ("[a]n enterprise must exist separately and apart from the RICO defendant"). In the absence of an "enterprise" independent of BANA, plaintiffs cannot allege a RICO violation. Accordingly, BANA's motion to dismiss the RICO claim alleged in Count X of the amended complaint should be granted.

### b.      Hobbs Act

In its order denying plaintiffs' interlocutory appeal, the Sixth Circuit review did not recognize any federal claim in plaintiffs' action other than a RICO violation.  *See Marci Command; Timothy Command v. Bank of America*, No. 11-1310.   Nevertheless, this Court will address plaintiffs' Hobbs Act claim which appears as Count VIII of their amended complaint.  As an initial matter, in response to BANA's motion to dismiss, plaintiffs voluntarily withdrew the Hobbs Act claim.  Plaintiffs' Response at § II.A. (docket no. 43).    However, even if plaintiffs' had not withdrawn the claim, it should be dismissed.

In the amended complaint, plaintiffs alleged that BANA obtained money from them through "fictitious overdraft fees" and obtained the Fife Lake property through an "illegal foreclosure" in violation of the Hobbs Act.  Amend. Compl. at ¶ 90. The Hobbs Act provides in pertinent part that:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

18 U.S.C. § 1951(a).

However, plaintiffs cannot maintain a cause of action under the Hobbs Act because it is a federal criminal statute which does not give rise to a private cause of action.  "[F]ederal courts have consistently found that the Hobbs Act does not support a private cause of action."  *Campbell v. Austin Air Systems, Ltd.*, 423 F.Supp.2d 61, 72 (W.D.N.Y. 2005).  *See, e.g., Stanard v. Nygren*, 658 F.3d 792, 794 (7th Cir. 2011) ("[t]he complaint also included a number of obviously frivolous claims; for example, a violation ofthe Hobbs Act (a criminal statute that does not provide a private

right of action)"); *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 408-09 (8th Cir.

1999) ("neither the statutory language of 18 U.S.C. § 1951 nor its legislative history reflect an intent

by Congress to create a private right of action"); *Hopson v. Shakes*, No. 3:12-cv-722-M, 2013 WL

1703862 at *2 (W.D. Ky. April 19, 2013) ("The Hobbs Act is a criminal statute, and federal courts

have consistently found that the Hobbs Act does not support a private cause of action") (internal

quotation marks omitted); *Bajorat v. Columbia-Breckenridge Development Corp.*, 944 F. Supp.

1371, 1377-78 (N.D. Ill. 1996) (listing cases that have uniformly held that the Hobbs Act does not

carry an implied private right of action); *Peterson v. Philadelphia Stock Exchange*, 717 F. Supp.

332, 336 (E.D. Pa. 1989) (finding that "[t]he Hobbs Act contains no language which suggests it can

provide civil relief").   Accordingly, BANA's motion to dismiss the Hobbs Act claim alleged in

Count VIII of the amended complaint (which appears to be unopposed) should be granted.

### B.   BANA's Motion to remand (docket no. 36) and Plaintiffs' Motion to file a second amended complaint (docket no. 40)

### 1.   Legal Standard

BANA seeks to remand this action back to the Grand Traverse County Circuit Court

for lack of federal subject matter jurisdiction.   "If at any time before final judgment it appears that

the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).

"[T]he words of § 1447(c) are unambiguous."  *Battah v. ResMAE Mortgage Corporation*, 746

F.Supp.2d 869, 874 (E.D. Mich. 2010).  *See J.S.R. v. Washington Hospital Center Corporation*, 667

F. Supp. 2d 83, 83-86 (D.D.C. 2009) (where the United States removed a case from the Superior

Court for the District of Columbia on the basis of federal question jurisdiction, and was later

dismissed as a defendant, the federal court "no longer had any subject matter jurisdiction over the

case and was required, by the mandatory language of § 1447(c), to remand the case back to Superior Court"). *See, also, Graham v. University Physician Group*, No. 11-10319, 2011 WL 1157333 at *2 (E.D. Mich. March 29, 2011) (where the plaintiff's complaint, in its current form, did not contain any federal claims, the Court no longer had subject matter jurisdiction under 28 U.S.C. § 1447(c), could not rule on the plaintiff's motion to amend the complaint, and had to remand the matter to the state court where the plaintiff could seek to amend the complaint).

### 2.      Discussion

BANA removed this action based upon the RICO claim alleged in plaintiffs' original complaint. The amended complaint added another federal claim under the Hobbs Act. For the reasons stated above, plaintiffs' RICO and Hobbs Act claims should be dismissed. Plaintiffs' amended complaint also included a vague allegation regarding "Mail Fraud" (Count IX), claiming that "Defendants [sic] used the mail to further their scheme." Amend. Compl. at ¶ 98. BANA's motion to dismiss does not include this count as a separate federal claim. It appears that plaintiffs alleged this count as a predicate act for their RICO claim. However, even if plaintiffs' amended complaint is construed to allege an independent claim for mail fraud in violation of 18 U.S.C. § 1341, such a violation does not give rise to a private cause of action. *Morganroth & Morganroth v. DeLorean*, 123 F.3d 374, 386 (6th Cir. 1997). *See Deasy v. Louisville & Jefferson County Metropolitan Sewer District*, 47 Fed. Appx. 726, 728 (6th Cir. 2002) ("[m]ail fraud is a criminal offense for which there is no private right of action"). In summary, with the dismissal of the RICO claim, the Hobbs Act claim and the arguable Mail Fraud claim, plaintiffs' amended complaint does not include any federal claims. Accordingly, at this point 28 U.S.C. § 1447(c) is unambiguous in directing that this case be remanded to the state court for lack of subject matter jurisdiction. *See*

Section II.B.1., *supra.* Finally, plaintiffs' subsequent motion to file a second amended complaint should be denied for lack of jurisdiction. *See, e.g., Graham*, 2011 WL 1157333 at *2.

## IV.   Recommendation

For the reasons set forth above, I respectfully recommend that BANA's motion to dismiss (docket no. 36) be **GRANTED** as to Counts VIII and X of the amended complaint.

I further recommend that BANA's motion to remand (docket no. 36) be **GRANTED** and that plaintiffs' remaining claims as alleged in Counts I, II, III, IV, V, VI, VII and IX of the amended complaint be **REMANDED** to the Grand Traverse County Circuit Court pursuant to 28 U.S.C. § 1447(c).

I further recommend that plaintiffs' motion to file a second amended complaint (docket no. 40) be **DENIED** for lack of subject matter jurisdiction.

Dated:  April 21, 2014                                    /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).